IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

| | | |
|---|---|---|
| RITA THOMPSON | § | |
| v. | § | CIVIL ACTION NO. 2:12cv687 |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | § | |

MEMORANDUM OPINION AND ORDER

On October 26, 2012, Plaintiff initiated this civil action pursuant to the Social Security Act (The Act), Section 205(g) for judicial review of the Commissioner's denial of Plaintiff's application for Social Security benefits. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in the proceeding pursuant to 28 U.S.C. § 636(c).

**I.    HISTORY**

Plaintiff filed a Title XVI application for supplemental security income benefits, alleging disability beginning August 2, 2010. The claims were denied initially and on reconsideration, and Plaintiff requested a hearing.

This hearing was conducted on June 14, 2011. In the decision from this hearing, the ALJ determined that Plaintiff retained the residual functional capacity to perform sedentary work, with no climbing ladders or working around heights, and the need to understand, remember, and carry out no more than simple work tasks. This level of restriction would exclude Plaintiff's previous work, which included jobs as a cook, housekeeper, and printing company worker, but would permit her to perform other work existing in significant numbers in the national economy, as shown by the testimony of the vocational expert (VE). Plaintiff sought review of this decision, which the Appeals Council denied on September 28, 2012. This action followed.

## II.  STANDARD

Title XVI of the Act provides for supplemental security income benefits. Judicial review of the denial of disability benefits under section 205(g) of the Act, 42 U.S.C. § 405(g), is limited to "determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)); *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (per curiam). A finding of no substantial evidence is appropriate only where there is a conspicuous absence of credible choices or no contrary medical evidence. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Accordingly, the Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner]'s, even if the evidence preponderates against the [Commissioner]'s decision." *Bowling*, 36 F.3d at 435 (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)); *see Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985). Rather, conflicts in the evidence are for the Commissioner to decide. *Spellman*, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)); *Anthony*, 954 F.2d 289, 295 (5th Cir. 1992) (citing *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983)). A decision on the ultimate issue of whether a claimant is disabled, as defined in the Act, rests with the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000); Social Security Ruling ("SSR") 96-5p.

"Substantial evidence is more than a scintilla but less than a preponderance – that is, enough that a reasonable mind would judge it sufficient to support the decision." *Pena v. Astrue*, 271 Fed.Appx. 382, 383 (5th Cir.2003) (*citing Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir.1994)). Substantial evidence includes four factors: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability; and (4) the plaintiff's age, education, and work history. *Fraga v. Bowen*, 810 F.2d 1296, 1302 n.4 (5th Cir. 1987). If supported by substantial evidence, the decision of the Commissioner is conclusive and must be affirmed.

*Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). However, the Court must do more than "rubber stamp" the ALJ's decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner]'s findings." *Cook*, 750 F.2d 391, 393 (5th Cir. 1985). The Court may remand for additional evidence if substantial evidence is lacking or "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42. U.S.C. § 405(g); *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994).

A claimant for disability has the burden of proving a disability. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an anatomical, physiological, or psychological abnormality which is demonstrable by acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

In order to determine whether a claimant is disabled, the Commissioner must utilize a five-step, sequential process. *Villa*, 895 F.2d at 1022. A finding of "disabled" or "not disabled" at any step of the sequential process ends the inquiry. *Id*.; *see Bowling*, 36 F.3d at 435 (citing *Harrel*, 862 F.2d at 475). Under the five-step sequential analysis, the Commissioner must determine at Step One whether the claimant is currently engaged in substantial gainful activity. At Step Two, the Commissioner must determine whether one or more of the claimant's impairments are severe. At Step Three, the Commissioner must determine whether the claimant has an impairment or combination of impairments that meet or equal one of the listings in Appendix I. Prior to moving to Step Four, the Commissioner must determine the claimant's Residual Functional Capacity ("RFC"), or the most that the claimant can do given her impairments, both severe and non-severe. Then, at Step Four, the Commissioner must determine whether the claimant is capable of performing her past relevant work. Finally, at Step Five, the Commissioner must determine whether the claimant can perform other work available in the local

or national economy. 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f). An affirmative answer at Step One or a negative answer at Steps Two, Four, or Five results in a finding of "not disabled." *See Villa*, 895 F.2d at 1022. An affirmative answer at step three, or an affirmative answer at steps four and five, creates a presumption of disability. *Id.* To obtain Title II disability benefits, Plaintiff must show that she was disabled on or before the last day of her insured status. *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir.1981), *cert. denied*, 455 U.S. 912, 102 S. Ct. 1263, 71 L. Ed. 2d 452 (1982). The burden of proof is on the claimant for the first four steps, but shifts to the Commissioner at Step Five if the claimant shows that she cannot perform her past relevant work. *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989) (per curiam).

### III. ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ made the following findings in her July 29, 2011 decision:

The claimant has not engaged in substantial gainful activity since August 2, 2010, the alleged onset date (20 C.F.R. § 416.971 *et seq.*)

The claimant has the following severe impairments: chronic left leg pain, etiology unknown, and mild generalized bulging lumbar disc at L5-S1 (20 C.F.R. § 416.920(c)).

The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 416.920(d), 416.925 and 416.926).

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 416.967(a), except the claimant cannot climb ladders or work at heights. Mentally, the claimant can understand, remember, and carry out simple, routine tasks as demanded in the jobs rated at no more than Reasoning Development Level 2 by the Dictionary of Occupational Tasks.

The claimant is unable to perform any past relevant work. (20 C.F.R. § 416.965).

The claimant was born on March 1, 1974, and was 36 years old, which is defined as a younger individual age 18-44, on the date the application was filed. (20 C.F.R. § 416.963).

The claimant has a limited education and is able to communicate in English (20 C.F.R. § 416.964).

Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is not disabled, whether or not the claimant has transferable job skills. (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

> Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 416.969 and 416.969(a)).
>
> The claimant has not been under a disability, as defined in the Social Security Act, since August 2, 2010, the date the application was filed. (20 C.F.R. § 416.920(g)).

## IV. DISCUSSION

### A. Plaintiff's Claims

In her brief, Plaintiff raises four claims, set forth as follows:

1. The ALJ's decision was not supported by substantial evidence as Plaintiff meets Listing 1.02(a)(b)(d).

2. The ALJ erred in failing to consider Plaintiff's side effects of her medication as a significant non-exertional limitation and consider the combined effects of Plaintiff's impairments, exertional and non-exertional.

3. The ALJ did not give Plaintiff's treating physicians' opinions proper weight.

4. The ALJ erred in assessing Plaintiff's residual functional capacity (RFC) without giving weight to the treating physicians' opinions and therefore the decision is not supported by substantial evidence.

### B. Summary of the Medical Evidence

According to the Plaintiff's brief, she suffers from: chronic severe back and neck pain; L/S radiculitis; mild reversal of the lordotic curve; arthralgias and myalgias; cervical and lumbar neuropathy; bulging disc at L5-S1; LLE pain; positive Homan's sign; pain and swelling to left leg; weak left pedal pulse; abnormal cardiovascular; chronic right hand pain; left peroneal nerve injury; right CTS; left hip and shoulder pain; and peripheral edema.

Plaintiff points to a January 26, 2009 letter written by her treating physician, Dr. Richard Hozdic, which states in pertinent part as follows:

> Ms. Thompson has had severe and progressive left leg pain with weakness, which has been on-going for about a year. Initially, the pain was intermittent, but recently has become somewhat more chronic in nature. At this point, the exact etiology of her pain is still undetermined. She has had extensive work up [sic] performed without an exact etiology found. Currently, we are arranging for the patient to receive an evaluation by a neurologist to have possible nerve conduction studies performed.

> However, the pain is debilitating. **This patient is unable to walk without a cane.** She reports that she is in constant pain and at times is having to be treated with narcotic pain medication. I do not feel that the patient is capable of holding any type of employment due to her medical condition and the use of sedative medications. (Tr. 201)

Plaintiff goes on to state that Dr. Hozdic treated her for a number of years for her pain. His records show that Plaintiff had a positive Homan's sign, pain and swelling in her left leg, weak left pedal pulse, left peroneal nerve injury, and neuropathy. Dr. Hozdic ultimately referred Plaintiff to Dr. Ifteqar Syed for chronic pain management, and Dr. Syed's records confirm Dr. Hozdic's diagnoses and add additional findings of left lumbar radiculopathy and on-going chronic lumbar back pain. Plaintiff states that records from Good Shepherd Medical Center show that Plaintiff suffered an injury to her left leg and foot as a result of her left leg weakness; she quotes these records, in pertinent part, as follows:

> The patient is a 33 year old female wt* [sic] presents with a complaint of lower leg pain and lower leg swelling. Duration lasting 4 day(s). The course is waxing and waning. Location: Left lower leg. Type of injury: Negative. The degree of pain is moderate. The degree of swelling is minimal. Degree of dysfunction: negative. There are mitigating factors including rest and immobilization. Prior episodes: no DVT [deep vein thrombosis]. The risk factor is negative. Pt with intermittent swelling of left lower ext along with lt posterior leg pain, tripped today because of the pain and partially ripped off toenail. (Tr. 449)

Plaintiff states that Dr. Syed wrote a report addressing the side effects of her chronic pain medication, which read in pertinent part as follows:

> Rita Thompson is a patient of Dr. Ifteqar Syed at the Pain Management Institute. She does take the following medication on a daily basis: Methadone 10mg. The current medication that she is taking has been associated with a variety of side effects including drowsiness, itching, sleeplessness, inability to concentrate, apathy, lessened physical activity, drastically reduced attention-span, constriction of the pupils, constipation, nausea, vomiting, difficulty with urination, and respiratory depression. (Tr. 418)

The Court's review of Plaintiff's medical records shows that on April 13, 2008, she went to the hospital in Atlanta, Texas complaining of left lower leg pain. A positive Homan's sign was registered, indicating a possible deep vein thrombosis, but there was no significant swelling. A radiology report resulted in a conclusion of "negative MRI of left lower leg for signs of significant bony or soft tissue pathology." (Tr. 265). A lower extremity venous duplex exam dated April 22, 2008 found no

6

compressibility of the deep veins in Plaintiff's left leg, no evidence of venous obstruction in the left superficial femoral and popliteal veins, no evidence of valvular incompetence, and no evidence of deep vein thrombosis. Three weeks later, Plaintiff saw Dr. Lloyd Fruge complaining of left leg pain. Dr. Fruge noted no redness or swelling to her calf, although the calf was tender to palpation. (Tr. 320).

A radiology report dated November 24, 2008, found that Plaintiff's left lower leg bones had normal density and architecture with no evidence of fracture, bone destruction or joint pathology. On December 10, 2008, Plaintiff saw Dr. Hozdic, who described her as a "healthy appearing individual in no distress." She was tender to palpation in the left calf and thigh, but her reflexes were normal and she had a strong dorsalis pedis pulse. (Tr. 322). A left extremity venous duplex exam found no compressibility of the deep veins in Plaintiff's left leg, no evidence of venous obstruction in the left superficial femoral and popliteal veins, no evidence of valvular incompetence, and no evidence of deep vein thrombosis. A radiology report a week later found mild generalized bulging of the anulus fibrosus at L5/S1, but the MRI of the lumbar spine was otherwise normal. (Tr. 324).

On January 12, 2009, Plaintiff saw Dr. Hozdic, who noted that her pain had been "intermittent" and that she "has had thorough work-up without any obvious etiology being found." Her left calf was tender to palpation, but no Homan's sign was present. (Tr. 327).

A June 9, 2009 exam at Baylor University Medical Center revealed a complaint of left leg pain, but straight leg raises of both lower extremities did not elicit pain. She had a limited range of motion in her right leg, but swelling was absent and circulation and sensation were intact. (Tr. 360)

On August 13, 2009, Dr. Hozdic examined Plaintiff and found that she had normal gait and all of her extremities were normal in appearance and gross function. Her calf was tender to palpation. X-rays of the cervical spine revealed normal bony alignment and normal soft tissues, without evidence of fracture or dislocations. The foranima were patent with normal alignments of the posterior elements. There was mild reversal of the normal lordotic curve of the cervical spine but the exam was otherwise normal. (Tr. 329)

One year later, on August 3, 2010, Plaintiff saw Dr. Hozdic complaining of pain to her left shoulder, although there was no trauma, the bony architecture was intact, and no soft tissue abnormality was noted. She also complained of pain to her left outer leg, but reported that she had been seeing Dr. Syed and nerve conduction tests were normal. (Tr. 330) In March of 2011, Plaintiff saw Dr. Syed, who wrote a letter to Dr. Hozdic concerning this visit. The letter states that Plaintiff continues to have chronic back and neck pain, but that this pain "seems to be adequately controlled by methadone." The letter notes that "On examination she was seating casually in the office; she appeared to be in no acute distress. Her posture was normal, she did however have a limping gait and utilized a cane in the left hand. There was some tenderness over the left hip and left shoulder following her recent fall on this side. She had good range of movements in her extremities though lumbar spine movement was mildly decreased." (Tr. 412)

A physical residual functional capacity assessment was done by Dr. Roberta Herman on September 3, 2010. Dr. Herman concluded that Plaintiff could occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, stand or walk at about six hours in a normal eight-hour workday, sit for about six hours in an eight-hour workday, and push or pull an unlimited amount. Dr. Herman noted that according to Plaintiff's medical records, an MRI of her spine revealed a mild bulging of the annulus at L5-S1, but on August 13, 2009, a cervical spine X-ray was normal, and her gait was within normal limits. On August 13, 2010, she was described as "healthy appearing" and in no distress, and her gait was again within normal limits. In January of 2009, Dr. Hozdic observed that she needed a cane, but there was no indication on current visits that Plaintiff continued to require the use of a cane. (Tr. 346-47).

**C. The Plaintiff's Issues**

**1. Listing 1.02(a)(b)(d).**

Plaintiff asserts first that the ALJ's decision was not supported by substantial evidence because she meets the requirements of Listing 1.02(a)(b)(d), but the ALJ found that she did not.

Listing 1.02 refers to the major dysfunction of a joint for any reason, which is characterized by gross anatomical deformity and chronic joint pain and stiffness, with signs of limitations of motion or other abnormal motion of the affected joints, and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joints. This can include various factors: 1.02(a) speaks of the involvement of one major peripheral weight-bearing joint, such as the knee, hip, or ankle, resulting in the inability to ambulate effectively, and 1.02(b) speaks of involvement of one major peripheral joint in each upper extremity, such as the shoulder, elbow, or wrist-hand, resulting in inability to perform fine and gross movements effectively.

Plaintiff states that the "ability to ambulate effectively" is defined as an extreme limitation of the ability to walk, including having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device that limits the functioning of both upper extremities; this includes the inability to walk without the use of a walker, two crutches, or two canes, as set out in 20 C.F.R., part 404, Subpart, Appendix 1, §1.00B2b.

Plaintiff goes on to state that an ALJ must consider a claimant's pain, which may be an important factor contributing to functional loss. Plaintiff quotes the regulation providing that "pain or other symptoms may be an important factor contributing to functional loss," and that it is "important to evaluate the intensity and persistence of such pain or other symptoms carefully in order to determine their impact on the individual's functioning under these listings."

However, Plaintiff says that the ALJ "implicitly found Plaintiff's chronic pain syndrome to be a non-severe impairment." She notes that the ALJ found Plaintiff to have severe impairments but did not list chronic pain syndrome as one of these. Plaintiff asserts that the record contains two physicians' reports concerning the existence of chronic pain syndrome as well as objective findings that Plaintiff suffered from muscle spasms with tenderness to palpation, cervical and lumbar neuropathy, L/S radiculitis, chronic left lower extremity pain, positive Homan's sign, left peroneal nerve injury, and chronic severe neck and back pain.

The Commissioner responds that the ALJ assessed a severe impairment of "chronic left leg pain," which involves the same pain complaints which Plaintiff describes as "chronic pain syndrome." The Commissioner maintains that the ALJ did not overlook Plaintiff's complaints of pain or otherwise fail to consider relevant medical evidence.

With regard to Listing 1.02, the Commissioner asserts that a finding that the claimant meets a listed impairment must be based on objective medical evidence rather than conclusions or the claimant's own statements. In this case, the Commissioner claims that Plaintiff did not identify any medical evidence showing that she has experienced joint space narrowing, bony destruction, or ankylosis; such findings must be shown by "acceptable medical imaging," which Plaintiff has not done.

In *Bullock v. Astrue*, 277 Fed.Appx. 325, 2007 WL 4180549 (5th Cir., November 27, 2007), the claimant Sheila Bullock asserted that the ALJ erred in determining that she did not meet Listing 1.02(A). The Fifth Circuit rejected this assertion, noting that Bullock had never been diagnosed with subluxation, contracture, bony or fibrous ankylosis, or instability as required by Listing 1.02(A). The Fifth Circuit also determined that Bullock failed to show she was unable to ambulate effectively; the record indicated that she was able to walk with the help of a single cane, not a walker, two crutches, or two canes. She could climb stairs with the use of a handrail and told her physician that she could walk two blocks at a time. The Fifth Circuit thus concluded that substantial evidence supported the ALJ's determination that Plaintiff did not meet all of the criteria of Listing 1.02(A). *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (for a claimant to show her impairment matches a listing, it must meet *all* of the specified medical criteria; impairments which manifest only some of the criteria of a listing, no matter how severely, do not qualify).

Similarly, the Plaintiff in this case has not shown major dysfunction of a joint which is characterized by gross anatomical deformity such as subluxation, contracture, bony or fibrous ankylosis, or instability. Nor has the Plaintiff presented findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joints.

10

Furthermore, Plaintiff has not presented evidence of inability to ambulate effectively, as defined in section 1.00B(1) and (2). These sections provide that ineffective ambulation is defined generally as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device or devices that limit the functioning of both upper extremities, such as the inability to walk without the use of a walker, two crutches, or two canes. On August 3, 2010, the same date she filed her disability application, Plaintiff saw Dr. Hozdic for her continuing complaints of left leg pain. Dr. Hozdic described her as "healthy looking" and said that her gait was "normal," and a nerve conduction test was also normal.

On August 23, 2010, Dr. Syed saw Plaintiff. His exam at this time reflects only a conclusion of "chronic low back pain" and a continuing prescription of methadone for pain control. At visits in October and November of 2010, Dr. Syed noted that Plaintiff was limping and using a cane. In March of 2011, Dr. Syed's observations of Plaintiff reflect that she was sitting casually in his office without distress and that he believed her pain was adequately controlled with methadone. (Tr. 412). Dr. Syed's records do not reflect that he prescribed a cane for Plaintiff or affirmatively state that she needed one to walk.

Although Plaintiff refers to a statement by Dr. Hozdic that she "is unable to walk without the use of a cane" and that the doctor "does not feel that she is capable of holding any type of employment," this statement was made in January of 2009, some 19 months before Plaintiff applied for benefits in August of 2010 and outside of the relevant time period. When Dr. Hozdic saw Plaintiff in August of 2010, during the relevant period, he wrote that she appeared healthy and had a "normal gait."

As the Commissioner points out, the statement that Dr. Hozdic did not feel that Plaintiff could hold any type of employment is a legal conclusion and thus entitled to "no special significance" in the ALJ's determination. *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). Substantial evidence supports the ALJ's determination that Plaintiff did not meet all of the requirements of Listing 1.02. Her first ground for relief is without merit.

    **2. Non-Exertional Limitations**

11

### A. Side Effects of Medication

Plaintiff argues that although her treating physicians discussed the side effects of her pain medication, the ALJ did not consider this nor mention it in the opinion. The ALJ noted that Plaintiff took a strong narcotic medication called methadone for her pain and that Plaintiff testified at the hearing that the medication made her sleepy. The ALJ made note of this side effect in her RFC finding, concluding that Plaintiff was limited to work in Reasoning Development Level 2 (simple, routine tasks).

Plaintiff refers to a report from Dr. Syed concerning the side effects of her medication. This report (Tr. 418) is in the form of a "to whom it may concern" letter dated October 19, 2009, which is prior to the alleged onset date. The letter reads, in its entirety, as follows:

> Rita Thompson is a patient of Dr. Ifteqar Syed at the Pain Management Institute. She does take the following medication on a daily basis: methadone 10 mg. The current medication that she is taking has been associated with a variety of side effects including drowsiness, itching, sleeplessness, inability to concentrate, apathy, lessened physical activity, drastically reduced attention span, constriction of the pupils, constipation, nausea, vomiting, difficulty with urination, and respiratory depression.

As the Commissioner correctly observes, this letter simply lists side effects associated with methadone; it does not state that Plaintiff actually suffered any of them. Plaintiff points to nothing in the medical records to show that she suffered any side effects beyond the drowsiness to which she testified at the hearing and which the ALJ considered in her RFC findings. Plaintiff's contention in this regard fails to show that the Commissioner's decision was not supported by substantial evidence and offers no basis for relief.

### B. Failure to consider combined effects of impairments

Plaintiff states that use of the grid rules under the Medical-Vocational Guidelines is only appropriate when it is established that a claimant suffers only from exertional impairments or that the claimant's non-exertional impairments do not significantly affect her residual functional capacity. She adds that exertional impairments are present when the limitations and restrictions imposed by the impairments, such as pain, affect only the claimant's ability to meet the strength demands of jobs, such as sitting, standing, walking, lifting, carrying, pushing, and pulling, while non-exertional limitations

are present when the restrictions imposed by the impairments affect only the claimant's ability to meet the demands of jobs other than the strength demands, such as difficulty seeing, toleration of dust or fumes, or difficulty performing the postural functions of some work. A claimant can have a combination of exertional and non-exertional limitations or restrictions.

Plaintiff argues that the statements of Dr. Hozdic and Dr. Syed, in conjunction with the evidence concerning her physical limitations, constituted "some evidence" that her chronic pain syndrome, alone or in combination with other impairments, affected her ability to work. She again contends the ALJ failed to include chronic pain syndrome as an impairment and states that the failure to consider the effect of this syndrome in combination with her other impairments was reversible error.

The ALJ found that Plaintiff's chronic left leg pain was a severe impairment, which finding involves the same complaints of pain as the Plaintiff's allegation of "chronic pain syndrome." This finding was relied upon in determining the Plaintiff's residual functional capacity. The first hypothetical posed to the vocational expert at the hearing postulated an individual who could lift no more than 10 pounds occasionally and five pounds frequently, could stand for a total of two hours and sit for six hours, could not climb ladders or work at heights, and that due to the side effects of medication, is limited to simple, routine tasks rated at reasoning development level 2 but no higher. This question addresses both exertional and non-exertional limitations, including the side effects of Plaintiff's medication to which she testified as well as her complaint of chronic pain. Based on the vocational expert's answer, the ALJ determined that Plaintiff was capable of performing sedentary work with additional limitations, for which jobs existed in the national and regional economy.

Plaintiff's counsel asked the vocational expert to assume that the hypothetical individual needed more break time than that typically provided for the jobs because of side effects and symptoms, and the vocational expert stated that "there wouldn't be any competitive work at that point." Similarly, Plaintiff's counsel asked about absenteeism of "greater than two days out of a month on a continuing and repeating basis," and the vocational expert again said that there would not be competitive work.

The ALJ concluded that there was no expert opinion evidence or credible testimony to support a conclusion that Plaintiff required more work breaks than those regularly scheduled or that her severe impairments would cause her to miss at least two days of work every month. Plaintiff argues that these hypothetical limitations are based on the findings of Dr. Hozdic and Dr. Syed, pointing to Dr. Hozdic's January 2009 letter stating that he did not believe Plaintiff could hold any type of employment and Dr. Syed's letter listing the side of effects of methadone. However, the medical records as a whole make clear that substantial evidence exists to support the ALJ's determination in this regard.

Numerous entries in the medical records indicate that normal findings were made on various examinations. While a positive Holman's sign was registered, this sign simply indicates the possibility of thrombosis; however, two lower extremity venous duplex exams showed no signs of a deep vein thrombosis. X-rays and MRI's of her leg resulted in normal findings and no etiology could be discovered for the pain about which Plaintiff complained. No physician prescribed a cane for Plaintiff or said that one was medically required, and Dr. Hozdic stated that she had "normal gait" at the August 2010 examination.

Plaintiff has failed to show that the ALJ did not consider exertional and non-exertional limitations. Although she argues that the ALJ's opinion "reflects no consideration of the alleged severe impairment of chronic pain syndrome," the ALJ designated "chronic leg pain" as a severe impairment and considered this impairment in determining Plaintiff's residual functional capacity. The chronic pain syndrome cited by Plaintiff is essentially the same as the chronic leg pain found by the ALJ, a non-exertional impairment which was used in determining Plaintiff's residual functional capacity. Plaintiff has failed to show that there is a conspicuous absence of credible choices or that no contrary medical evidence exists regarding this issue. *Johnson*, 864 F.2d at 343-44.

The Fifth Circuit has stated that whether pain is disabling is a question for the ALJ, who has the primary responsibility for resolving conflicts in the evidence; it is within the ALJ's discretion to determine the disabling nature of a claimant's pain, and this decision is entitled to "considerable deference." *Chambliss v. Massanari,* 269 F.3d 520, 522 (5th Cir. 2001). In order to be disabling, pain

must be "constant, unremitting, and wholly unresponsive to therapeutic treatment." *Falco*, 27 F.3d at 163. The determination as to whether an applicant can work despite some pain is within the province of the administrative agency and must be upheld if supported by substantial evidence. *See Jones v. Heckler*, 702 F.2d 616, 622 (5th Cir. 1983).

In this case, the ALJ determined that Plaintiff's chronic leg pain was a severe impairment and considered this claim of pain in determining the Plaintiff's residual functional capacity. Substantial evidence supported this determination; in addition, a report from Dr. Syed indicated that Plaintiff's pain was well controlled by methadone (Tr. 412) and thus was clearly not "wholly unresponsive to therapeutic treatment." *See also Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991) (noting that "how much pain is disabling is a question for the ALJ since the ALJ has primary responsibility for resolving conflicts in the evidence") This claim is without merit.

### C. Failure to give proper weight to treating physicians

Plaintiff states that under Social Security regulations, the ALJ must give the treating physician's opinion controlling weight as long as it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. She says that both Dr. Hozdic and Dr. Syed found her disabled, citing findings such as tenderness in the left lower extremity and a positive Homan's sign, pain and swelling in her left calf, back pain with sciatica, a left peroneal nerve lesion, chronic back and neck pain, swelling of her left lower extremity, and that she requires a cane to walk.

Although Plaintiff states that both Dr. Hozdic and Dr. Syed found her disabled, the Commissioner correctly observed that statements that a claimant is "disabled" or "unable to work" are legal conclusions rather than medical opinions and need not be credited by the ALJ. *Frank*, 326 F.3d at 620. While Dr. Hozdic did state that Plaintiff "could not walk without a cane" in January of 2009, some 19 months before she applied for disability benefits, he found in August of 2010 that she had "normal gait." Plaintiff has failed to show that the ALJ erred in relying on the August 2010

observation, which was within the relevant period, rather than the January 2009 statement over a year and a half earlier.

In addition, Plaintiff has not shown that the findings which she cites contravene the ALJ's determination of her severe impairments or her residual functional capacity, nor that the ALJ's findings in this regard are not supported by substantial evidence. As stated above, a finding of no substantial evidence is appropriate only where there is a conspicuous absence of credible choices or no contrary medical evidence. *Johnson*, 864 F.2d at 343-44. In conducting this review, the district court cannot reweigh the evidence in the record, try the issues *de novo*, or substitute its own judgment for that of the Commissioner, even if the evidence preponderates against the Commissioner's decision. *Bowling*, 36 F.3d at 435. Plaintiff has failed to show that the ALJ's findings were not supported by substantial evidence, and her claim on this point is without merit.

### D. Error in assessing the residual functional capacity

In her fourth ground for relief, Plaintiff argues that residual functional capacity is defined wholly in terms of the physical ability to perform certain exertional tasks, and if a claimant has a non-exertional impairment, the Medical-Vocational Guidelines and grid are not controlling and cannot be used to direct a conclusion of disabled or not disabled without regard to other evidence such as vocational testimony. While these guidelines may be used exclusively, despite the presence of non-exertional impairments, if these impairments do not significantly diminish the residual functional capacity, Plaintiff maintains that is not the case here because her non-exertional limitations do significantly affect her residual functional capacity.

Although the Plaintiff argues that the ALJ erred by applying the Medical-Vocational Guidelines despite the presence of non-exertional limitations, the record shows that the ALJ did not rely on these Guidelines to find Plaintiff not disabled. In addition, the ALJ included non-exertional limitations in her questioning of the vocational expert. Plaintiff's claim relating to the alleged misapplication of the Medical-Vocational Guidelines is without merit.

Finally, Plaintiff argues generally that "the ALJ's assessment of Plaintiff's RFC is incorrect and not based on the medical and testimonial evidence" and thus was not supported by substantial evidence. A review of the medical records and the testimony at the hearing shows that the evidence amply supports the residual functional capacity finding of the ALJ. Plaintiff has not shown a conspicuous absence of credible choices or no contrary medical evidence with regard to the RFC determination. *Johnson*, 864 F.2d at 343-44. Her claim on this point is without merit.

## VI. CONCLUSION

A claimant bears the burden of proving that he or she suffers from a disability, defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). The Fifth Circuit has explained that the claimant has the burden of proving that he was disabled by showing a "medically determinable" impairment, demonstrated by "medically acceptable clinical and laboratory diagnostic techniques." *Greenspan v. Shalala*, 38 F.3d 232, 239 (5th Cir. 1994).

In this case, substantial evidence supports the ALJ's finding that the Plaintiff was not under a disability as defined in the Social Security Act from the date of onset until the day the decision was rendered. Because the Plaintiff failed to meet her burden of proof and the ALJ's decision was supported by substantial evidence in the record, it must be affirmed. *Bowling*, 36 F.3d at 435. It is accordingly

**ORDERED** that the decision of the Commissioner is hereby **AFFIRMED** and the above-styled and numbered Social Security action is hereby **DISMISSED** with prejudice.

**SIGNED this 26th day of February, 2014.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE